**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang**

Civil Action No. 21-cv-01603-NYW-MEH

COPPER CREEK INC.,

      Plaintiff,

v.

STATE FARM FIRE AND CASUALTY COMPANY,

      Defendant.

---

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant's Motion for Summary Judgment (the "Motion" or "Motion for Summary Judgment"). [Doc. 35]. Upon review of the Motion and the associated briefing, the applicable case law, and the record before the Court, the Court concludes that oral argument will not materially assist in the resolution of this matter. For the reasons set forth below, the Motion for Summary Judgment is respectfully **GRANTED in part** and **DENIED in part**.

## BACKGROUND

This case arises out of a homeowners insurance policy issued by Defendant State Farm Fire and Casualty Company ("Defendant" or "State Farm") to an individual named Mark Miller ("Mr. Miller"). *See* [Doc. 8 at ¶ 6]. Plaintiff Copper Creek Inc. ("Plaintiff" or "Copper Creek") alleges that on or about June 19, 2018, Mr. Miller's home was damaged by a hail and windstorm. [*Id.* at ¶ 7]. Plaintiff also alleges that Mr. Miller assigned "the rights, proceeds and benefits due to [him] for the damage relating to the loss and claim to" Plaintiff. [*Id.* at ¶ 8].

Copper Creek initiated this civil action against State Farm on June 14, 2021, [Doc. 1], and filed an Amended Complaint and Jury Demand (the "Amended Complaint") on August 2, 2021. [Doc. 8].  The Amended Complaint asserts three causes of action:  (1) breach of contract ("Claim One"); (2) unreasonable delay or denial of insurance benefits under Colo. Rev. Stat. §§ 10-3-1115 and 10-3-1116 ("Claim Two"); and (3) common law bad faith breach of an insurance contract ("Claim Three").  [*Id.* at 9-10].  State Farm answered the Amended Complaint on August 7, 2021. [Doc. 11].

On June 13, 2022, State Farm filed the instant Motion for Summary Judgment, seeking judgment in its favor on each of Plaintiff's three claims.  [Doc. 35].  Plaintiff responded in opposition on July 5, 2022, [Doc. 36], and Defendant replied on July 19, 2022.  [Doc. 37].  This matter is thus ripe for disposition.[1]

### UNDISPUTED MATERIAL FACTS

The below material facts are drawn from the Parties' briefing and are undisputed unless otherwise noted.[2]

1.      State Farm issued a homeowners insurance policy (the "Policy") to Mr. Miller. [Doc. 35 at ¶ 1; Doc. 36 at ¶ 1; Doc. 35-1 at 1].

---

[1] This case was reassigned to the undersigned on August 4, 2022.  [Doc. 38].

[2] The Court only considers those facts supported by record evidence, as required by Rule 56(c)(1)(A) of the Federal Rules of Civil Procedure.  *See* Fed. R. Civ. P. 56(c)(1)(A) ("A party asserting that a fact cannot be or is genuinely disputed <u>must</u> support the assertion by . . . citing to particular parts of materials in the record.") (emphasis added); *Conkling v. Tri-State Careflight, LLC*, No. 1:14-cv-00234-WJ-KBM, 2017 WL 4564927, at *4 (D.N.M. Apr. 25, 2017) ("The Court need not consider facts that are not supported by a party's exhibits."); *Nash v. Wal-Mart Stores, Inc.*, No. 15-cv-02330-RM-MEH, 2017 WL 5188339, at *3 (D. Colo. Feb. 15, 2017), *aff'd*, 709 F. App'x 509 (10th Cir. 2017) ("The Court will not consider statements of fact, or rebuttals thereto, which are not material or are not supported by competent evidence.").

2.      The Policy provides, under the heading "Suits Against Us," that "[n]o action shall be brought unless there has been compliance with the policy provisions.  The action must be started within one year after the date of loss or damage."  [Doc. 35 at ¶ 2; Doc. 36 at ¶ 2; Doc. 35-1 at 28].

3.      The Policy also states that State Farm "will not pay for any increased cost of construction under this coverage . . . unless the repairs or replacement are made as soon as reasonably possible after the loss, not to exceed two years."  [Doc. 35 at ¶ 3; Doc. 36 at ¶ 3; Doc. 35-1 at 38].

4.      On May 19, 2020, Mr. Miller assigned his rights under the Policy to Copper Creek. [Doc. 35 at ¶ 6; Doc. 36 at ¶ 6].

5.      The Policy provides that "[a]ssignment of this policy shall not be valid unless [State Farm] give[s] [its] written consent."  [Doc. 35 at ¶ 8; Doc. 36 at ¶ 8; Doc. 35-1 at 34].

6.      State Farm did not consent to the assignment.  [Doc. 35 at ¶ 7; Doc. 36 at ¶ 7].

7.      On June 19, 2018, there "was allegedly a storm that damaged Mr. Miller's property."  [Doc. 35 at ¶ 4; Doc. 36 at ¶ 4; Doc. 35-2 at 1].

8.      On March 11, 2020, Mr. Miller filed a claim with State Farm.  [Doc. 35 at ¶ 5; Doc. 36 at ¶ 5; Doc. 35-2 at 1].

9.      On April 17, 2020, State Farm claims specialist Roger Whalen completed a damage estimate and concluded that the actual hail damage to Mr. Miller's property amounted to $1,510.34, which was less than the deductible under the Policy.  [Doc. 35 at ¶ 9; Doc. 36 at ¶ 9; Doc. 35-3 at ¶¶ 5, 7; Doc 35-4 at 12].

10.     That same day, Mr. Whalen sent a letter to Mr. Miller stating that because the amount of loss did not exceed the deductible, State Farm was "unable to make a payment on [the] claim at this time," and noting that State Farm's inspection "did reveal signs of wear, tear,

deterioration and[/]or latent defect to the tiles," which was "not covered by [the] policy." [Doc. 35 at ¶ 10; Doc. 36 at ¶ 10; Doc. 35-5 at 1].[3]

11.     Plaintiff retained a public adjuster, Jason Hahn, who estimated that the roof needed to be replaced at a cost of $98,991.64, after applying the Policy deductible. [Doc. 35 at ¶¶ 11–12; Doc. 36 at ¶¶ 11–12; Doc. 35-6 at 6].

12.     Mr. Hahn then "retained Gary Manlove with JBA Consulting" to inspect the roof. Mr. Manlove concluded that a new roof was needed because the type of tile on the roof was discontinued. [Doc. 35 at ¶ 13; Doc. 36 at ¶ 13; Doc. 35-7 at 6].

13.     State Farm subsequently hired Envista Forensics on June 24, 2020. An Envista Forensics engineer "concluded the roof was not functionally damaged due to hail." [Doc. 35 at ¶¶ 14–15; Doc. 36 at ¶¶ 14–15; Doc. 35-3 at ¶ 10; Doc. 35-9 at 4–5].[4]

14.     Mr. Miller demanded an appraisal on September 9, 2020. [Doc. 35 at ¶ 16; Doc. 36 at ¶ 16; Doc. 35-10 at 1].

15.     On May 24, 2021, an umpire awarded repair costs of $21,607.54. [Doc. 35 at ¶ 18; Doc. 36 at ¶ 18; Doc. 35-13 at 6].

16.     On June 1, 2021, Mr. Hahn demanded that State Farm replace the entire roof due to the discontinued tile, stating: "It looks like the [appraisal] panel didn't consider [building] code[s] into the signed award. The signed award is for repair of 100 concrete tiles. That amount

---

[3] Plaintiff disputes that Mr. Whalen "explained" to Mr. Miller "the nature, extent, or amount of wear, tear, deterioration and/or latent defect to the tiles on the roof" but does not dispute that the letter was issued on April 17, 2020 or the contents of the letter. *See* [Doc. 36 at ¶ 10].

[4] The Parties dispute the date that the engineer reached this conclusion, *see* [Doc. 36 at ¶ 15], which is not material to the Court's ruling on the pending Motion. The Court notes that the engineer's report is dated August 12, 2020. [Doc. 35-9 at 1].

is well over 1 [square]. . . .  Since the repair is over 1 [square] you will need to agree on replacement of the entire roof."[5]  [Doc. 35 at ¶ 19; Doc. 36 at ¶ 19; Doc. 35-14 at 1].

       17.     On June 27, 2021, State Farm paid the appraisal award.  [Doc. 35 at ¶ 20; Doc. 36 at ¶ 20; Doc. 35-15 at 1].[6]

       18.     State Farm denied the roof-replacement demand on July 2, 2021, stating:

> We received your request for ordinance and law coverage submitted to State Farm on June 1, 2021.  We have made payment based on the actual cash value of the appraisal award; the appraisal states that the umpire did not address the code claims since a permit is only required by the city if more than a square of roofing is being either manipulated or replaced.  The amount of roofing in the [appraisal] is less [than] the required square therefore, no codes would apply to the roof.  In addition[,] the policy language for appraisal does not alter the policy language for replacement cost benefits or Option OL - Building Ordinance or Law Coverage in the policy which allows for two years from the date of loss to complete the repairs.

[Doc. 35 at ¶ 21; Doc. 36 at ¶ 21; Doc. 35-16 at 1].[7]

---

[5] For purposes of background, Plaintiff takes the position that "a permit is required for roof repairs that exceed one square, and the Arapahoe County Building Official will not issue Plaintiff a permit because the roofing tiles are no longer manufactured and, thus, cannot be certified by the manufacturer," but "State Farm refuses to issue payment for the roof to be replaced."  [Doc. 36 at 2].  The Court understands Plaintiff's argument to be that because it is unable to obtain a permit to *repair* the roof, an entire roof *replacement* is necessary to fix the damages caused by the hail and windstorm.

[6] Plaintiff "admits that State Farm paid the actual cash value of the appraisal award on June 27, 2021," but does not identify any portion of Defendant's assertion that Plaintiff disputes, if any.  [Doc. 36 at ¶ 20].  This fact is thus deemed undisputed for purposes of the Motion.  *See* Fed. R. Civ. P. 56(e)(2).

[7] Defendant asserts that State Farm denied the claim "<u>because</u> the Policy provides [that] State Farm[] 'will not pay for any increased cost of construction under this coverage[] unless the repairs or replacement are made as soon as reasonably possible after the loss, not to exceed two years.'"  [Doc. 35 at ¶ 21 (emphasis added) (quoting Doc. 35-1 at 38)].  Plaintiff disputes Defendant's assertion that this was the basis for the denial, arguing instead that the "express reason for the denial" was State Farm's statement concerning the size of the repair and State Farm's subsequent position that because the required repairs did not exceed one square, no building codes applied to the repair and no permit was required to repair the roof.  [Doc. 36 at ¶ 21].

19.     Plaintiff initiated this lawsuit on June 14, 2021.  [Doc. 35 at ¶ 22; Doc. 36 at ¶ 22; Doc. 1].

## LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 56, summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A dispute is genuine if there is sufficient evidence so that a rational trier of fact could resolve the issue either way.  A fact is material if under the substantive law it is essential to the proper disposition of the claim."  *Crowe v. ADT Sec. Servs., Inc.*, 649 F.3d 1189, 1194 (10th Cir. 2011) (internal citations and quotation omitted).

"[I]t is not the party opposing summary judgment that has the burden of justifying its claim; the movant must establish the lack of merit."  *Alpine Bank v. Hubbell*, 555 F.3d 1097, 1110 (10th Cir. 2009).  In attempting to meet this standard, a movant that does not bear the ultimate burden of persuasion at trial does not need to disprove the other party's claim; rather, the movant need simply point the Court to a lack of evidence for the other party on an essential element of that party's claim.  *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).  Once the movant has met its initial burden, the burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  To satisfy this burden, the nonmovant must point to competent summary judgment evidence creating a genuine dispute of material fact; conclusory statements based on speculation, conjecture, or subjective belief are insufficient.  *See Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004); *see also* 10B Charles Alan Wright et al., *Federal Practice and Procedure* § 2738 (4th ed. 2022) (explaining that the nonmovant cannot rely on "mere reargument of his case or a denial of an opponent's allegation"

6

to defeat summary judgment). In considering the evidence, the Court cannot and does not weigh the evidence or determine the credibility of witnesses. *See Fogarty v. Gallegos*, 523 F.3d 1147, 1165 (10th Cir. 2008). At all times, the Court will "view the factual record and draw all reasonable inferences therefrom most favorably to the nonmovant." *Adler*, 144 F.3d at 670.

## ANALYSIS

State Farm argues that it is entitled to summary judgment on each of Copper Creek's claims. *See generally* [Doc. 35]. It first asserts that Plaintiff's breach of contract claim is untimely because it was filed outside of the limitations period set forth in the Policy. [*Id.* at 5]. In the alternative, it contends that even if the breach of contract claim is timely, it must fail as a matter of law because State Farm did not breach the Policy. [*Id.* at 7]. Defendant then contends that, because Plaintiff's statutory and common law bad faith claims are "wholly derivative" of the breach of contract claim, it is entitled to summary judgment on the latter two claims, as well. [*Id.* at 9]. Finally, State Farm argues that it is entitled to summary judgment on the bad faith claims because there is no dispute of material fact that it acted reasonably in handling the roofing claim. [*Id.* at 10, 13]. The Court addresses these arguments in turn.

## I.      Breach of Contract

### A.      Statute of Limitations

As set forth above, the Policy states that any action against State Farm "must be started within one year after the date of loss or damage." [Doc. 35-1 at 28]. State Farm argues that "the Policy unambiguously creates a jurisdictional bar by precluding any right of action if the time bar is not met," and pursuant to the Policy, "Plaintiff had one year from June 19, 2018 to bring suit against State Farm." [Doc. 35 at 6, 7]. Because Plaintiff commenced this lawsuit more than one

year after the alleged date of loss in this case, State Farm contends that it "cannot be considered in breach of contract as a matter of law." [*Id.* at 7].

Generally speaking, Colorado law provides a three-year statute of limitations for all contract actions. Colo. Rev. Stat. § 13-80-101(1)(a). However, contracting parties "may require that actions founded on the contract be commenced within a shorter period of time than that prescribed by the applicable statute of limitations," with one caveat identified by the Colorado Court of Appeals: the contractual clause shortening the limitations period cannot be "prohibited by statute." *Grant Fam. Farms, Inc. v. Colo. Farm Bureau Mut. Ins. Co.*, 155 P.3d 537, 538, 539 (Colo. App. 2006).

Plaintiff argues that the Policy provision requiring that actions be filed within one year from the date of the loss is prohibited by Colo. Rev. Stat. § 10-4-110.8. *See* [Doc. 36 at 5–6]. This statute provides that

> [n]otwithstanding any provision of a homeowner's insurance policy that requires the policyholder to file suit against the insurer, in the case of any dispute, within a period of time that is shorter than required by the applicable statute of limitations provided by law, a homeowner may file such a suit within the period of time allowed by the applicable statute of limitations.

Colo. Rev. Stat. § 10-4-110.8(12)(a). Plaintiff maintains that "pursuant to the assignment of benefits, Plaintiff filed suit on behalf of the insureds and is entitled to the same contractual rights as the insured homeowners." [Doc. 36 at 6]. In its Reply, Defendant argues that this statutory provision is inapplicable here because Plaintiff "is not a 'homeowner.'" [Doc. 37 at 2]. Defendant maintains that this case is analogous to *Brookshire Downs at Heatherridge Condominium Ass'n, Inc. v. Owners Insurance Co.*, 324 F. Supp. 3d 1201 (D. Colo. 2018), wherein another court in this District concluded that § 10-4-110.8(12) did not apply to extend a condominium association's filing period that was limited by the applicable insurance policy. [*Id.* at 2–3].

8

*Brookshire* is readily distinguishable from this case.  In *Brookshire*, the parties did not dispute that the condominium association was not a "homeowner" under § 10-4-110.8(12)(a), but instead disagreed as to whether the subject insurance policy was a "homeowner's insurance policy" as stated in subsection (12)(b) of the statute.  *Brookshire*, 324 F. Supp. 3d at 1204–06.  Section 10-4-110.8(12)(b) provides that "an insurer shall not issue or renew a homeowner's insurance policy that requires the policyholder to file suit against the insurer . . . within a period of time that is shorter than required by the applicable statute of limitations provided by law."  Colo. Rev. Stat. § 10-4-110.8(12)(b).  The plaintiff in *Brookshire* argued that because its insurance policy covered damages to condominiums, which are a type of "home," its insurance policy was a "homeowner's insurance policy" within the meaning paragraph (12)(b), even though the association itself was not a "homeowner" as used in paragraph 12(a).  *Brookshire*, 324 F. Supp. 3d at 1204.  The *Brookshire* court rejected this argument, concluding that paragraphs (12)(a) and (12)(b) "are complementary, not independent," and finding that there was no discernable reason why the Colorado Legislature would protect only "homeowners" in paragraph (a) but protect any other person "who might be deemed to be the holder of a homeowner's insurance policy" under paragraph (b).  *Id.* at 1206.  The court predicted that the Colorado Supreme Court would hold that "policyholder," as used in paragraph (12)(b), and "homeowner," as used in paragraph (12)(a), are used synonymously, and thus, paragraph (12)(b) did not apply to the condominium association's insurance policy or nullify the shorter limitations period contained in the policy.  *Id.*

But here, unlike *Brookshire*, Plaintiff was not the original policyholder; Mr. Miller was. [Doc. 35 at ¶ 1; Doc. 36 at ¶ 1].  State Farm does not argue that Mr. Miller was not a "homeowner" as contemplated in § 10-4-110.8(12)(a).  *See* [Doc. 35; Doc. 37].  Thus, as a homeowner and pursuant to *Grant Family Farms*, absent any assignment, Mr. Miller would have had "the right to

9

file a claim against [State Farm] within the applicable statute of limitations, '[n]otwithstanding any provision of a homeowner's insurance policy' to the contrary." *Schniedwind v. Am. Fam. Mut. Ins. Co.*, 157 F. Supp. 3d 944, 949 (D. Colo. 2016) (quoting Colo. Rev. Stat. § 10-4-110.8(12)(a) (alteration marks in original)).

As an undisputed fact, State Farm acknowledges that Mr. Miller assigned his claims to Copper Creek. *See* [Doc. 35 at ¶ 6]. While State Farm cursorily argues that "it would not be permissible to assign bad faith claims until there is a determination that the insurer has unreasonably denied or delayed a claim or otherwise acted in bad faith, as that duty flows from the carrier to the policy holder and not the assignee," [*id.* at 2 n.2], it does not argue that the assignment is ineffective, but rather, contends that the bad faith claims can only follow after a finding of breach of contract.  [*Id.*].  Later, on Reply, Defendant argues that "[t]he assignment is invalid and does not support Plaintiff's attempt to extend the contractual limitations period on an 'assignment' theory."  [Doc. 37 at 2 n.1].  This does not comport with State Farm's own undisputed fact that Mr. Miller assigned his claims to Copper Creek.   Indeed, State Farm acknowledges that an assignment after a loss may be permitted with regard to an insurance policy breach of contract. [Doc. 35 at 2 n.2].  In any event, State Farm does not meaningfully argue, or cite any authority, that the post-loss assignment to Copper Creek was ineffective; or that Mr. Miller was required to be a plaintiff in this case.  *See* [*id.*; Doc. 37 at 2 n.1].  Thus, these arguments are waived.  *United States v. Hardman*, 297 F.3d 1116, 1131 (10th Cir. 2002) ("Arguments raised in a perfunctory manner, such as in a footnote, are waived."); *Gutierrez v. Cobos*, 841 F.3d 895, 902 (10th Cir. 2016) (observing that a party waives arguments that are raised for the first time in a reply brief).

"An assignee of a contract stands in the shoes of the assignor."  *White River Vill., LLP v. Fid. & Deposit Co. of Maryland*, No. 08-cv-00248-REB-BNB, 2009 WL 792728, at *7 (D. Colo

Mar. 23, 2009); *see also Regency Realty Invs., LLC v. Cleary Fire Prot., Inc.*, 260 P.3d 1, 6 (Colo. App. 2009). And "[s]ince an assignee of contract rights stands in the shoes of the assignor, [the assignee] may proceed against [the other contracting party] as if he were [the assignor]." *Backus v. Apishapa Land & Cattle Co.*, 615 P.2d 42, 44 (Colo. App. 1980). State Farm raises no argument explaining why Mr. Miller's purported assignment of rights under the Policy would not place Copper Creek in Mr. Miller's position, permitting Copper Creek to proceed against State Farm as if it were Mr. Miller, or why Copper Creek would assume lesser rights than those afforded to Mr. Miller under the Policy. *See* [Doc. 37]. And the Court can discern no reason why the purported assignment of rights under the Policy would work to shorten the applicable limitations period, given that under State Farm's view, an assignment of rights to a non-homeowner occurring more than one year after the date of loss would seemingly exhaust any right to sue, rendering the assignment meaningless. Accordingly, the Court is not persuaded by Defendant's statute of limitations argument and does not find summary judgment on the breach of contract claim appropriate on this basis.

### B.    Whether a Breach of the Policy Occurred

In the alternative, State Farm argues that even if Copper Creek's breach of contract claim is timely, it nevertheless fails as a matter of law because "[t]here was never any denial of benefits owed" and there was thus no breach of the insurance contract. [Doc. 35 at 7, 8]. According to State Farm, the only benefits it owed to Copper Creek "under Colorado law prior to suit" were "the damages ultimately determined to be appropriate based on [the umpire's] decision per the policy appraisal process." [*Id.* at 8]. State Farm further states that because it paid the umpire's award of benefits approximately one month after the award was issued, it "at all times complied with the policy and paid benefits according to the policy when due." [*Id.*]. State Farm does not

cite any authority or Policy provisions in support of its argument that "[t]he only benefits owed under Colorado law prior to suit were the damages ultimately determined to be appropriate" in the appraisal.[8]  [*Id.*].

Contrary to State Farm's argument, "appraisal and litigation of [a] breach of contract . . . claim[] are not mutually exclusive." *Andres Trucking Co. v. United Fire & Cas. Co.*, 488 P.3d 425, 430 (Colo. App. 2018).  "An appraisal is 'an act of estimating' or 'a valuation of property by the estimate of an authorized person,' and determines 'only the amount of loss.'"  *Id.* (quoting *Unetco Indus. Exch. v. Homestead Ins. Co.*, 57 Cal. App. 4th 1459, 1467 (Cal. Ct. App. 1997) and *Hartford Lloyd's Ins. Co. v. Teachworth*, 898 F.2d 1058, 1062 (5th Cir. 1990)).  Thus, "[a]ppraisal awards are binding as to items within the scope of the appraisal but not as to items outside that scope," *Hometown Cmty. Ass'n, Inc. v. Phila. Indem. Ins. Co.*, No. 17-cv-00777-RBJ, 2017 WL 6335656, at *4 (D. Colo. Dec. 12, 2017), *on reconsideration in part*, 2018 WL 2008853 (D. Colo. Apr. 30, 2018), and "an appraisal award, by itself, does not entitle either the insured or the insurer to judgment in its favor on the insured's claim[] of breach of contract" *Andres Trucking*, 488 P.3d at 430 (citation and quotation marks omitted).  In other words, State Farm "is incorrect in contending that appraisal awards necessarily preclude any further breach of contract claims." *Hometown Cmty. Ass'n*, 2017 WL 6335656, at *4.  The Court is thus respectfully unpersuaded by

---

[8] State Farm cites two cases for the proposition that an "appraisal award is binding on the parties." *See* [Doc. 35 at 8 (citing *Auto-Owners Ins. Co. v. Summit Park Townhome Ass'n*, 129 F. Supp. 3d 1150, 1154 (D. Colo. 2015) and *Tae Hyung Lim v. Am. Econ. Ins. Co.*, No. 13-cv-02063-CMA-KLM, 2014 WL 1464400, at *1 (D. Colo. Apr. 14, 2014)].  But neither case cited by Defendant addresses the viability of a breach of contract claim in light of an appraisal award.  *See Auto-Owners Ins. Co. v. Summit Park Townhome Ass'n*, 129 F. Supp. 3d 1150, 1151 (D. Colo. 2015) (ruling on a motion to compel the appraisal process); *Tae Hyung Lim v. Am. Econ. Ins. Co.*, No. 13-cv-02063-CMA-KLM, 2014 WL 1464400, at *1 (D. Colo. Apr. 14, 2014) (ruling on a "Motion for Protective Order Regarding Appraiser and Umpire Discovery and Testimony and *in Limine* to Preclude Admission of Any Materials Created After Appraisal was Demanded at Trial").

State Farm's argument that the fact of the appraisal award payment alone precludes the breach of contract claim. Instead, the Court must determine whether there are matters outside the scope of the appraisal that could form the basis of Plaintiff's breach of contract claim. *See Hometown Cmty. Ass'n*, 2017 WL 6335656, at *4.

In its Response, Plaintiff disagrees that there has been no breach of the Policy. It first argues that Defendant breached the insurance contract by originally underestimating the value of the loss (by valuing the claim for less than what the appraisal umpire awarded) and failing to make any payments as to the loss until "more than one year after the claim was reported to State Farm." [Doc. 36 at 7]. However, Plaintiff directs the Court to no Policy provision or legal authority that supports its assertion that a breach occurs where the insurer undervalues a claim or delays making payments until after an appraisal is completed. *See* [*id.*]. This alone is a sufficient basis to reject Plaintiff's argument.[9] *See Phillips v. Calhoun*, 956 F.2d 949, 953–54 (10th Cir. 1992).

Plaintiff next contends that "Defendant still has not paid the full amounts owed under the Policy" because the appraisal award "did not include the additional costs that will be required pursuant to county ordinance to repair the roof." [Doc. 36 at 7, 8]. Respectfully, the Court finds Plaintiff's reasoning in this portion of its Response difficult to follow; however, after reviewing the entirety of Plaintiff's Response and Plaintiff's attached exhibits, the Court understands Plaintiff's argument to run as follows:

- The Arapahoe County Building Code requires a permit for roofing repairs or replacement greater than "one square."[10] [Doc. 36 at 11; Doc. 36-2 at 43, 51].

_____

[9] The Court notes that the Policy states that "[l]oss will be payable 60 days after we receive your proof of loss and: a. reach agreement with [the insured]; b. there is an entry of a final judgment; or c. there is a filing of an appraisal award with [State Farm]." [Doc. 35-1 at 28]. Thus, under this provision, it appears that loss payments were not due until after the appraisal award.

[10] Neither Party clearly explains what "one square" of roofing tiles refers to. Based on the Parties' briefing, the Court understands a "square" to refer to a specific quantified area of roofing. *See, e.g.*, [Doc. 36 at 2 ("[T]he replacement of 100 roofing tiles . . . is greater than one square.")]; [Doc.

- The appraisal award contemplates the removal or replacement of more than one square of tiles.  [Doc. 36 at 8; Doc. 36-2 at 51; Doc. 36-8 at 1].

- Because the appraisal award contemplates removal or replacement of more than one square, a roofing permit is required to conduct those repairs.  [Doc. 36 at 8; Doc. 36-2 at 51; Doc. 36-8 at 1].

- The type of tiles on Mr. Miller's roof have been discontinued.  [Doc. 36 at 11; Doc. 36-2 at 51; Doc. 36-3 at 1].

- Because this specific type of tile has been discontinued, only salvaged tiles—i.e., "tiles that were 'salvaged' from a previous re-roofing job[]"—are available to replace Mr. Miller's damaged tiles.  [Doc. 36 at 11; Doc. 36-2 at 51].

- Arapahoe County, pursuant to its re-roofing guidelines, will not permit salvaged roofing tiles to be used unless they are certified by the manufacturer.  [Doc. 36 at 11; Doc. 31-1 at 2; Doc. 1 at 16].[11]

- It is Plaintiff's position that because the tiles are no longer manufactured, the tile manufacturer cannot certify the salvaged tiles, which renders it "impossible" to obtain a permit for spot repairs to the roof.  [Doc. 36 at 2, 11].

- Because it is impossible to obtain the required permit for spot repairs, a full roof replacement is necessary to remedy the roof damage.  [*Id.* at 2].

- Applicable laws or ordinances were not considered in the appraisal process.  [*Id.* at 7; Doc. 35-13 at 1].

- Thus, the availability of coverage for the replacement of the roof, which is required based on county codes, is outside of the scope of the appraisal and State Farm is responsible under the Policy for the cost of the full roof replacement.  [Doc. 36 at 7–8].

Where, as here, questions exist as to what was actually considered in the appraisal award,

the scope of the appraisal award is a factual determination appropriately reserved to the jury.  *See*

---

37 at 4 (questioning whether non-damaged tiles "must be counted in calculating whether the replacement of tiles exceed one square")].

[11] Plaintiff attached to its original Complaint (which is also referenced in, but not attached to, the Amended Complaint) a letter from an Arapahoe County official stating that "[he] will not approve any [salvaged] material for a tile roof unless it can be certified . . . and be [warranted]."  [Doc. 1 at 16].  In ruling on the Motion for Summary Judgment, the Court "need consider only the cited materials, but it may consider other materials in the record."  Fed. R. Civ. P. 56(c)(3).

*Concept Rests., Inc. v. Travelers Indem. Co.*, No. 16-cv-00450-DME-NYW, 2016 WL 8737773, at *4 (D. Colo. Dec. 2, 2016) (considering whether the nonmovant had submitted evidence to establish a genuine dispute of fact as to whether the appraisers considered "scaffolding, permitting, and traffic control costs" in the appraisal award).  Based on its review of the record, the Court concludes that Plaintiff has put forth sufficient evidence to create a genuine dispute of fact as to whether this coverage determination is outside the scope of the appraisal and, in turn, whether coverage exists for the full roof replacement.  Plaintiff has submitted evidence suggesting that, pursuant to Arapahoe County building codes and the requirements thereof, spot repairs of the roof are "impossible," thus rendering full roof replacement necessary.  *See, e.g.*, [Doc. 36-2 at 43, 51; Doc. 1 at 16].  State Farm does not dispute that the appraisal did not account for a full roof replacement, but it is unclear whether State Farm considered the applicability of the Arapahoe County building codes.  *See* [Doc. 35].  To the extent that Plaintiff could prove that the appraiser was required to consider, and did not consider, the Arapahoe County building codes, and that the necessity of and coverage for the full roof replacement was outside of the scope of the appraisal, the appraisal would not be binding on the Parties with respect to this issue.  *See Hometown Cmty. Ass'n*, 2017 WL 6335656, at *4 ("Appraisal awards are binding as to items within the scope of the appraisal but not as to items outside that scope.").  As a result, the fact that State Farm paid the appraisal award, which governed the cost of spot repairs, is insufficient to entitle it to summary judgment on the breach of contract claim.

Defendant asserts in its Reply that "the appraisers were tasked with determining whether the roof could be repaired or whether it had to be replaced," and after the appraisal, "two of the three appraisal panelists agreed the roof could be repaired, and only 99 tiles needed to be replaced." [Doc. 37 at 3 (emphases omitted)].  Defendant notes, however, that Mr. Hahn refused to sign the

appraisal award because he disagreed with the conclusion that repair, rather than replacement, was appropriate. [*Id.* at 3–4; Doc. 35-13 at 6]. Defendant asserts that "if [P]laintiff's theory that the Appraisal Award required roof replacement were plausible, it begs the question why [Plaintiff's] appraiser refused to sign the award given that the whole purpose of appraisal was to resolve the issue of whether the roof needed to be replaced." [Doc. 37 at 4 (emphasis omitted)]. The Court interprets this argument as an assertion that if the appraisal, as Plaintiff suggests, was limited to a determination as to spot repairs only and implicitly required total replacement of the roof, Mr. Hahn would have felt comfortable signing the award. The Court is respectfully unpersuaded that this argument justifies summary judgment in State Farm's favor, which would require the Court to construe evidence and draw inferences in favor of the non-moving party, which it cannot do. *See Sanchez v. City of Littleton*, 491 F. Supp. 3d 904, 913 n.7 (D. Colo. 2020).

In addition, Defendant challenges an underlying premise of Plaintiff's substantive argument—specifically, Plaintiff's contention that a permit is required for the repairs of the roof because the appraisal contemplates removal or replacement of more than one square of tile. [Doc. 37 at 4]. State Farm argues that that the appraisal award "noted explicitly that only 32 tiles were found to be damaged by hail," and "the other 67 tiles needing replacement only needed to be replaced to allow for repairs to roof jacks." [*Id.* (emphasis omitted) (citing Doc. 35-13 at 2)]. Defendant asserts that Plaintiff "did not cite any Code provision stating that 67 non-damaged tiles must be counted in calculating whether the replacement of tiles exceed one square." [*Id.* (emphasis omitted)]. State Farm asserts that it is "aware of at least two Building Officials who stated in

affidavits in other cases" that non-damaged tiles are not counted in determining whether the necessary replacement exceeds one square.  [*Id.*].[12]

But Defendant's arguments simply go toward the weight of Plaintiff's evidence and highlight the existence of a genuine dispute of material fact as to whether coverage for the replacement of the roof is outside the scope of the appraisal.[13]  Summary judgment is not warranted on this basis.

### C.     Whether Coverage is Precluded Under the Policy

Finally, Defendant argues that although Plaintiff seeks "additional compensation due to ordinance issues, this coverage was denied based on the policy language that mandates no coverage for any increased cost of construction under the policy unless the repairs are completed no less than two years from the date of loss."  [Doc. 35 at 8].  State Farm asserts that "[i]t is undisputed that the date of loss occurred on June 19, 2018, and to date, the repair work has not been completed."  [*Id.* at 8–9].  It follows, according to State Farm, that "there is no coverage afforded under the policy for this additional construction cost, and no dispute of material fact that precludes summary judgment on this issue."  [*Id.* at 9].

---

[12] Defendant submits affidavits filed in *Repola v. State Farm Fire and Casualty Co.*, Adams County District Court Case No. 2019CV030108, and *Beamgard v. State Farm Fire and Casualty Co.*, District of Colorado Case No. 20-cv-02744-DDD-STV.  *See* [Doc. 37 at 3-4; Doc. 37-2; Doc. 37-3]. It is not entirely clear how an affidavit from another case is competent summary judgment evidence in this action.

[13] While Plaintiff has not referenced any Arapahoe County building codes governing how a "square" is measured, Plaintiff has submitted evidence establishing that Mr. Manlove and Mr. Hahn each concluded that more than one square needs to be replaced.  *See* [Doc. 36-2 at 51; Doc. 36-8 at 1].  And Defendant has not explained why its interpretation of "square" is correct while Plaintiff's is not.  *See* [Doc. 37 at 4–5].  Indeed, neither of the affidavits attached to Defendant's Reply cite any applicable laws or codes in opining how a square is measured.  *See* [Doc. 37-2 at ¶ 16; Doc. 37-3 at ¶ 18].  It is not this Court's role to resolve such disputed technical issues at the summary-judgment stage.

Plaintiff responds that "State Farm has had notice of Plaintiff's claim since March 11, 2020 and has consistently delayed paying the complete amount Plaintiff is rightfully owed under the Policy." [Doc. 36 at 8]. Furthermore, Plaintiff asserts that it "has been unable to perform the roof replacement because it cannot obtain the necessary permit from the Building Department due to State Farm's refusal to accept liability for its covered damages." [*Id.*]. According to Plaintiff, "[t]he sole reason the roof has not been replaced is because State Farm refuses to admit the replacement is covered under the Policy." [*Id.*].

The Court considers Plaintiff's argument to resemble an assertion that the prevention doctrine applies here. "When 'a promisor is [itself] the cause of the failure of performance of a condition upon which his own liability depends, [it] cannot take advantage of that failure.'" *Montemayor v. Jacor Commc'ns, Inc.*, 64 P.3d 916, 920 (Colo. App. 2002). "The prevention doctrine is a generally recognized principle of contract law that provides that if one party prevents or hinders the other party's ability to perform, the other party's failure to perform is excused." *Baroness Small Ests., Inc. v. Round Hill Cellars*, No. 10-cv-01999-MSK-CBS, 2011 WL 6152969, at *4 (D. Colo. Dec. 12, 2011). Indeed, "the duty of good faith owed by the insurer to the insured requires that it not act to prevent the occurrence of conditions to its performance." *Dupre v. Allstate Ins. Co.*, 62 P.3d 1024, 1028 (Colo. App. 2002).

The Court respectfully concludes, however, that Plaintiff's argument is insufficient to excuse its non-compliance with the two-year replacement deadline in the Policy, which it does not dispute has not been satisfied. *See* [Doc. 36 at 8]. Although Plaintiff argues that it is unable to complete replacement of the roof "because it cannot obtain the necessary permit from the Building Department due to State Farm's refusal to accept liability for its covered damages," Plaintiff cites no record evidence in support of this assertion. [*Id.*]. Nor does Plaintiff explain why State Farm's

acceptance of liability is a prerequisite to securing a building permit for the roof work.  *See* [*id.*].  The only specific permit prerequisite Plaintiff mentions in its response is manufacturer certification for salvaged tiles, which Plaintiff further represents is inapplicable here because the manufacturer will not certify salvaged tiles.  [*Id.* at 11].  Simply put, Plaintiff does not support this assertion with record evidence, as required to create a genuine dispute of fact and preclude summary judgment.  *See* Fed. R. Civ. P. 56(c)(1)(A); *Anderson*, 477 U.S. at 250; Wright et al., *supra*, § 2738.

Copper Creek also asserts that "State Farm has had notice of Plaintiff's claim since March 11, 2020 and has consistently delayed paying the complete amount Plaintiff is rightfully owed under the Policy."  [Doc. 36 at 8].  Courts "routinely apply the doctrine of prevention to replacement requirements that leave the insured in a 'no win' situation, whereby '[t]he insured, in order to recover under the replacement cost coverage he or she purchased, would have to incur the cost of repairs and replacements when there is no guarantee that a future breach of contract action by the insured will be successful.'"  *Utica Mut. Ins. Co. v. Cincinnati Ins. Co.*, 362 F. Supp. 3d 265, 268 (E.D. Pa. 2019) (quoting *D & S Realty, Inc. v. Markel Ins. Co.*, 816 N.W.2d 1, 14 (Neb. 2012)); *see also Pollock v. Fire Ins. Exch.*, 423 N.W.2d 234, 237 (Mich. App. 1988) ("[D]efendant did not work with plaintiff to promptly pay the claim and enable her to repair or replace the building; rather, it did as much as possible to hinder plaintiff and delay or prevent the payment of the claim.  We will not now allow defendant to raise as a defense plaintiff's failure to perform an act which defendant itself greatly hindered plaintiff from performing.").

The Court recognizes the public policy implications of permitting an insurance company to run out the clock on its insured, which may not be able to pay replacement costs out-of-pocket, by delaying payment on a claim until a replacement deadline in the policy has expired.  But Copper

Creek does not make this policy argument in its Response to the Motion for Summary Judgment, nor does it clearly argue that the delay in payment has prevented it from full replacement due to financial constraints.  *See* [Doc. 36 at 8].  In fact, Plaintiff does not invoke application of the legal doctrine of prevention or cite any legal authority in support of its argument.  *See Robey-Harcourt v. BenCorp Fin. Co.*, 326 F.3d 1140, 1143 (10th Cir. 2003) ("Parties must support their arguments with legal authority."); *Simpson v. T.D. Williamson Inc.*, 414 F.3d 1203, 1206 n.4 (10th Cir. 2005) (declining to consider arguments made by a party who "ha[d] not cited a single authority in support of its arguments" and had not "argued that its positions [were] sound despite a lack of supporting authority or in the face of contrary authority").  This Court cannot raise an argument for Plaintiff that it did not raise itself.  *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (observing that a court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues").  And as more fully discussed below, to the extent that State Farm's actions caused Plaintiff to be unable to repair the roof and/or meet the replacement deadline, relief may be available through causes of action sounding in tort.

For these reasons, the Court concludes that Plaintiff has not established a genuine dispute of material fact as to whether its failure to comply with a condition precedent to coverage under the Policy may be excused.  There is thus no genuine dispute of fact that Plaintiff is not entitled to law or ordinance coverage for replacement costs under the Policy, and where there is no coverage, there can be no breach.  *Markel Ins. Co. v. Hollandsworth*, 400 F. Supp. 3d 1155, 1160 (D. Colo. 2019).  Defendant is thus entitled to summary judgment on Plaintiff's breach of contract claim. The Motion for Summary Judgment is **GRANTED** with respect to this claim.

II.     **Common Law and Statutory Bad Faith**

    A.     **Whether Plaintiff's Bad Faith Claims Are Derivative of the Breach of Contract Claim**

Next, Defendant argues that it is entitled to summary judgment on Plaintiff's statutory and common law bad faith claims because these claims are "derivative" of the breach of contract claim. [Doc. 35 at 9]. Defendant premises its argument on its contention that the breach of contract claim is time-barred, *see* [*id.*]; *see also* [*id.* at 10 ("[B]ecause Plaintiff commenced its lawsuit more than one year after the date of alleged damage in violation of [its] Policy's express limitation, Defendant cannot be considered in breach of contract as a matter of law.  Accordingly, Plaintiff's [bad faith] claims fail as a matter of law.")], which has been rejected by the Court.  Nevertheless, because the Court has concluded that Plaintiff has failed to establish a genuine issue of material fact precluding summary judgment on Claim One, the Court will address whether this necessarily renders summary judgment appropriate on Claims Two and Three.

Defendant argues that "courts in this District "ha[ve] a long history of holding that because both the common law and statutory bad faith claims are predicated on the insurer unreasonably delaying or denying benefits and are derivative of Plaintiff's failed breach of contract claim, they also cannot survive summary judgment."  [*Id.* at 9–10 (citing cases)].  Plaintiff responds that its bad faith claims are independent of the breach of contract claim, arguing that the cases relied upon by Defendant "are irrelevant as applied to the present case" because "each case cited to by State Farm involved a finding by the court that the plaintiff was not entitled to benefits under the policy." [Doc. 36 at 9].  But here, Plaintiff contends, there is no dispute that Plaintiff has coverage under the Policy, and "the dispute lies only in the amount of damages."  [*Id.* (emphasis omitted)].

The Court respectfully disagrees with Plaintiff.  To be sure, Plaintiff is correct that in each of the cases cited by Defendant, the court's basis for granting judgment in favor of the insurer on

the insured's bad faith claim was "a finding by the court that the plaintiff was not entitled to benefits under the policy." [*Id.*]. *See Owners Ins. Co. v. Stahl*, No. 18-cv-00230-CMA-SKC, 2019 WL 6682833, at *5 (D. Colo. Dec. 5, 2019) (a plaintiff's common law and statutory bad faith claims precluded where the plaintiff "cannot prove that he is entitled to [b]enefits under the insurance contract"); *Johnson v. Am. Nat'l Prop. & Cas. Cos.*, No. 17-cv-02218-WJM-KMT, 2019 WL 463026, at *5 (D. Colo. Feb. 6, 2019) ("Plaintiffs have failed to carry their burden at summary judgment to demonstrate that American National owed benefits to them and as a result breached the insurance contract between them. . . . Accordingly, the Court also grants the Motion on Plaintiffs' common law and statutory bad faith claims."); *Tynan's Nissan, Inc. v. Am. Hardware Mut. Ins. Co.*, 917 P.2d 321, 326 (Colo. App. 1995); *Perry v. Auto-Owners Ins. Co.*, No. 19-cv-3116-WJM-SKC, 2021 WL 4060633, at *9 (D. Colo. Sept. 7, 2021). These cases are directly applicable here, as the Court has concluded that Plaintiff has not met its burden of demonstrating that State Farm owed benefits to it and, by failing to pay those benefits, breached the Policy.

Copper Creek's statutory bad faith claim is expressly based on the existence of insurance coverage. *See* [Doc. 8 at ¶ 31 ("State Farm unreasonably delayed and denied payment of the claim for benefits owed to Miller and/or Copper Creek without a reasonable basis.")]. Because Plaintiff failed to establish a genuine dispute of fact as to whether there is coverage under the Policy, it cannot succeed on its statutory bad faith claim. *See Perry*, 2021 WL 4060633, at *9. Accordingly, the Motion for Summary Judgment is **GRANTED** with respect to Claim Two.

Similarly, a portion of Claim Three appears dependent on the existence of coverage. *See* [Doc. 8 at ¶ 35 ("State Farm has violated its duty of good faith and fair dealing by, among other things, failing to offer to pay Miller and/or Copper Creek an amount which it otherwise concluded to be a fair and reasonable amount for their losses and by compelling Copper Creek to institute

litigation to recover amounts due under the agreement of insurance with State Farm.")].  Insofar as Plaintiff's common law bad faith claim is based on the denial of coverage, the claim cannot stand.  *See Perry*, 2021 WL 4060633, at *9.  However, Plaintiff also alleges, *inter alia*, that

> State Farm conducted an improper, outcome-oriented investigation resulting in a biased, unfair, and inequitable evaluation of Plaintiff's/Miller's covered loss.  Further, State Farm's investigation was substandard at best and pre-determined the outcome before all facts were known.  Further, it took months for State Farm to render a decision at all, causing an unreasonable delay.  Worse yet, State Farm misrepresented the terms of the Policy to Miller and/or Copper Creek.

[Doc. 8 at ¶ 25]; *see also* [Doc. 30 at 3 (in the Scheduling Order, Plaintiff asserting that "State Farm failed to adequately investigate Miller's/Copper Creek's claim for damages, resulting in significant and unreasonably delays in the handling of Miller's/Copper Creek's claim.")].  Thus, Plaintiff's common law claim is not based just on State Farm's denial of coverage, but on State Farm's claims-handling conduct, too.

 "Bad faith breach of an insurance contract encompasses the entire course of conduct." *Pham v. State Farm Mut. Auto. Ins. Co.*, 70 P.3d 567, 572 (Colo. App. 2003).  "Colorado recognizes the viability of a [common law] claim of bad faith even if the express terms of the contract have been honored by the insurer."  *Dunn v. Am. Fam. Ins.*, 251 P.3d 1232, 1235 (Colo. App. 2010); *see also Berwick v. Hartford Fire Ins. Co.*, No. 11-cv-01384-MEH-KMT, 2012 WL 4097306, at *1 (D. Colo. Sept. 18, 2012) ("Colorado courts have recognized that a bad faith claim is not limited to the insurance company's decision to grant or deny a claim but can also include an insurer's unreasonable refusal to investigate a claim and to gather facts relevant to the claim.").  "[F]or any actions pertaining to the investigation and handling of a claim, an insurer acting unreasonably, and with knowledge or reckless disregard, may be held liable in tort for the breach of the covenant of good faith and fair dealing."  *Dunn*, 251 P.3d at 1235; *see also* Colo. Rev. Stat. § 10-3-1104(1)(h) (identifying unfair claim settlement practices, including "[m]isrepresenting

pertinent facts or insurance policy provisions relating to coverages at issue"; "[f]ailing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies"; and "[f]ailing to affirm or deny coverage of claims within a reasonable time after proof of loss statements have been completed").

Under *Dunn*, Plaintiff's challenge to State Farm's investigation and claims-handling practices does not fall with the breach of contract claim.  *See Domokos v. Shelter Mut. Ins. Co.,* 416 F. Supp. 3d 1209, 1233 (D. Colo. 2019).  Accordingly, summary judgment is not appropriate on Claim Three simply due to the Court's ruling on Claim One.

### B.    The Reasonableness of State Farm's Conduct

In the alternative, State Farm asserts that it is entitled to summary judgment on Plaintiff's common law bad faith claim because there is no dispute of material fact that State Farm acted reasonably.  [Doc. 35 at 13–15].  "To succeed on a common law claim of bad faith breach of an insurance contract, 'a plaintiff must show that the insurer acted both unreasonably and with knowledge of or reckless disregard of its unreasonableness.'"  *Thompson v. State Farm Mut. Auto. Ins. Co.*, 457 F. Supp. 998, 1002–03 (D. Colo. 2020) (quoting *Hyden v. Farmers Ins. Exch.*, 20 P.3d 1222, 1226 (Colo. App. 2000)).  A common law claim requires that the plaintiff prove both that the insurer acted unreasonably *and* that the insurer knew that it was acting unreasonably, thus heightening the requirements of a statutory bad faith claim.  *Butman Fam. Inv. Ltd. P'ship v. Owners Ins. Co.*, No. 19-cv-01638-KLM, 2020 WL 1470801, at *8 (D. Colo. Mar. 25, 2020).

As Defendant acknowledges, *see* [Doc. 35 at 11], "[w]hat constitutes reasonableness under the circumstances is ordinarily a question of fact for the jury."  *Vaccaro v. Am Family Ins. Grp.*, 275 P.3d 750, 759 (Colo. App. 2012); *Zolman v. Pinnacol Assurance*, 261 P.3d 490, 497 (Colo. App. 2011).  But "in appropriate circumstances, as when there are no genuine issues of material

fact, reasonableness may be decided as a matter of law." *Id.* "The reasonableness of the insurer's conduct is determined objectively and is 'based on proof of industry standards.'" *Schultz v. Geico Cas. Co.*, 429 P.3d 844, 847 (Colo. 2018) (quoting *Goodson v. Am. Standard Ins. Co. of Wis.*, 89 P.3d 409, 415 (Colo. 2004); *Bankr. Est. of Morris v. COPIC Ins. Co.*, 192 P.3d 519, 523 (Colo. App. 2008) ("[T]he question is whether a reasonable insurer under the circumstances would have denied or delayed payment of the claim.").

State Farm argues that there is no dispute that it acted reasonably in its investigation because "Plaintiff does not dispute that State Farm inspected the property, subsequently hired an expert to conduct [an] assessment, and ultimately an independent and neutral Umpire rendered an assessment to determine the cause and extent of damages to Plaintiff's roof, largely agreeing with the conclusions of Defendant's expert that [a] new roof was not required." [Doc. 35 at 14]. While this conduct certainly could support a jury's finding of reasonableness, *cf. Sipes v. Allstate Indem. Co.*, 949 F. Supp. 2d 1079, 1088 (D. Colo. 2013) (concluding that it was reasonable for an insurer to rely on an investigator's reports), State Farm's own evaluation of the reasonableness of its conduct and its own conclusion that it acted reasonably under the circumstances is not determinative of the issue. Plaintiff has directed the Court to evidence that State Farm explained its denial of replacement costs by stating that "[t]he amount of roofing [to be repaired or replaced] is less [than] the required square." [Doc. 35-16 at 1]. However, State Farm also acknowledged that the appraisal "awarded a repair of the roof with a total of 99 roofing tiles to be replaced," [Doc. 36-1 at 1], and Plaintiff represents that, at the time of the denial, State Farm had in its possession a letter from the tile manufacturer indicating that a "square" of the specific type of tiles on Mr. Miller's roof is comprised of 94 tiles. *See* [Doc. 36-7 at 1; Doc. 36 at 13]. It follows, according to Plaintiff, that State Farm "knew the replacement was greater than one square," yet

represented to Plaintiff that the replacement *did not* exceed one square.  [Doc. 36 at 13]; *cf. Nyborg v. State Farm Mut. Auto. Ins. Co.*, No. 20-cv-01918-RM-KLM, 2022 WL 3017106, at *6 (D. Colo. July 29, 2022) ("Colorado law prohibits insurers from 'misrepresenting pertinent facts . . . relating to coverages at issue.' . . .   An insurer's misrepresentation is a sufficient basis for bad faith claims.") (quoting Colo. Rev. Stat. § 10-3-1104(1)(h)(I) (alteration marks omitted)), *report and recommendation adopted*, 2022 WL 3369544 (D. Colo. Aug. 16, 2022).

Moreover, as stated above, bad faith claims are evaluated objectively, based on industry standards. *Schultz*, 429 P.3d at 847.  "These standards may be established through expert opinions or state law." *Peden v. State Farm Mut. Auto. Ins. Co.*, 841 F.3d 887, 890 (10th Cir. 2016).  But here, State Farm has not submitted any evidence demonstrating that its claims-handling conduct sufficiently aligns with industry standards. *See Jewell v. State Farm Mut. Auto. Ins. Co.*, No. 18-cv-02536-KLM, 2020 WL 1627348, at *5 (D. Colo. Feb. 26, 2020) ("Defendant here had the initial burden in the [motion for summary judgment] of either (1) providing evidence that Defendant complied with industry standards applicable to the facts of this case, or (2) pointing out that Plaintiff lacked evidence of an objective industry standard applicable to the facts of this case showing that Defendant acted unreasonably.  Defendant failed to do so.").

Finally, State Farm contends that "the very fact that it relied on its expert report and the Umpire's award . . . negates that State Farm knew its conduct was unreasonable or that it recklessly disregarded the fact that its conduct was unreasonable at the time the decision was made."  [Doc. 35 at 15].  State Farm cites no legal authority in support of this assertion, by which the Court is unpersuaded.  Holding that an insurance company cannot be deemed liable for bad faith conduct so long as it can hang its hat on the opinions of hired consultants would permit insurers to shield themselves from liability by attributing their coverage decisions to some expert's opinion.  Such a

result would disregard all of the objective industry standards upon which the reasonableness of an insurer's conduct is based, *see Schultz*, 429 P.3d at 847, which would contravene the well-established body of Colorado insurance law.  For all of these reasons, the Motion for Summary Judgment is **GRANTED** with respect to Claim Three, insofar as it is based on the fact of State Farm's denial of coverage, but is **DENIED** insofar as Claim Three is based on State Farm's investigation or claims-handling conduct.

## CONCLUSION

For the reasons set forth above, **IT IS ORDERED** that:

(1)   Defendant's Motion for Summary Judgment  [Doc. 35] is **GRANTED in part** and **DENIED in part**;

(2)   The Motion for Summary Judgment is **GRANTED** with respect to Claim One in its entirety, Claim Two in its entirety, and Claim Three to the extent it is based on State Farm's denial of coverage;

(3)   The Motion for Summary Judgment is **DENIED** with respect to Claim Three to the extent it is based on State Farm's investigation or claims-handling conduct; and

(4)   The Final Pretrial Conference set for February 7, 2023 at 10:00 a.m. **REMAINS SET**.

DATED:  December 6, 2022                    BY THE COURT:

_____
Nina Y. Wang
United States District Judge